1    SHIRLEY D. DEUTSCH, Bar No. 76230
     SCHWARTZ & DEUTSCH, LLP
2    333 South Hope Street, 35th Floor
     Los Angeles, California 90071
3    Tel: (213) 236-9400
     Fax: (213) 236-9499
4    Email: deutsch@sdllp.net

5    Attorney for Defendant
     MACY'S WEST STORES, INC.
6

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10   YULIE NAREZ, as an individual    Case No.:  5:16-cv-00936-LHK
     and on behalf of all others
11   similarly situated,

12              Plaintiffs,
                                      **DECLARATION OF MATTHEW MELODY IN**
13        v.                          **SUPPORT OF DEFENDANT'S MOTION TO**
                                      **COMPEL ARBITRATION**
14   MACY'S WEST STORES, INC. DBA
     MACY'S, an Ohio corporation;
15   and DOES 1 - 50, inclusive,

16              Defendants.

17

18

19
          I, Matthew Melody, hereby declare:
20
          1.    I am employed as Senior Manager, Associate Relations –
21
     Solutions InSTORE, for Macy's, Inc.  Macy's, Inc. is the parent
22
     company of the wholly-owned subsidiary, Macy's Retail Holdings,
23
     Inc. ("MRHI"), which operates the department stores in the United
24
     States that are known as "Macy's." MRHI operates the stores in
25
26   California through its wholly owned subsidiary Macy's West Stores,
27

28
                  DECLARATION OF MATTHEW MELODY IN SUPPORT OF DEFENDANT'S
                  MOTION TO COMPEL ARBITRATION-Case No.5:16-cv-00936-LHK

Inc. ("MWSI"). The Macy's store where Plaintiff Yulie Narez was employed was operated by MWSI.

2.   I submit this declaration in support of Defendants' Motion to Compel Arbitration and Stay Civil Proceedings.  I am over the age of eighteen years and competent to testify herein based upon my personal knowledge.  If called upon to do so, I could and would testify to these facts.

3.   In my capacity as Senior Manager, I am responsible for the management and administration of Macy's Solutions InSTORE Early Dispute Resolution Program ("Solutions InSTORE Program" or "Program").  My duties include responding to inquiries arising out of the introduction and implementation of the Program and determining whether a particular employee chose to participate in Step 4 of the Program (binding arbitration).  I supervise the Solutions InSTORE Program and the employees whose sole job is to administer the Solutions InSTORE Program.  I am also familiar with the history and implementation of the Solutions InSTORE Program before the time I became responsible for it through my communication with former and current employees of the Office of Solutions InSTORE and my personal review and analysis of the historical documentation and other records of the Office of Solutions InSTORE for which I serve as the custodian of records. These records are maintained in the ordinary course of business.

The employees in the Office of Solutions InSTORE, including myself, use and rely upon these documents in the performance of our job duties.

**The Solutions InSTORE Program.**

4.   In 2003, at great effort and expense, Macy's, Inc., then known as Federated Department Stores, Inc., developed and implemented Solutions InSTORE, which is a comprehensive early dispute resolution program.  The purpose of the Solutions InSTORE Program is to surface and resolve disputes as early and fairly as possible. With certain exceptions not pertinent here, the Solutions InSTORE Program applies to employees of all subsidiaries and divisions of Macy's, Inc.

5.   To support the Solutions InSTORE Program, Macy's established an Office of Solutions InSTORE within its Employee Relations Department in Cincinnati, Ohio.

6.   Since its inception, the Office of Solutions InSTORE has been staffed with employees whose sole responsibilities are to administer the Solutions InSTORE Program. Their responsibilities include: (a) managing associate calls to the toll-free Solutions InSTORE phone number and email address; (b) conducting investigations; (c) managing administration associated with program execution; and (d) training professionals throughout the company on topics such as facilitating Step 3 Peer Review Panels, managing

investigations, and facilitating early resolution.  The Office of Solutions InSTORE has its own dedicated budget from which the Program is administered.

7.   The Solutions InSTORE Program (including the initial Plan Document) was first rolled out in Fall 2003, with an effective date of January 1, 2004, to all then current, non-unionized employees of all Macy's-related companies, including those employed at Macy's stores located in California. The Plan Document was subsequently revised and implemented effective January 1, 2007, and most recently in 2014, with the current version of the Solutions InSTORE Program effective June 1, 2014.  This declaration will discuss the 2007 version of the Plan Document since that is the relevant Plan Document for this case.

8.   The Solutions InSTORE Program contains four separate steps for resolution of work-related problems.  By accepting and continuing their employment with Macy's, all employees are covered by Steps 1 through 4 of the Solutions InSTORE Program.  The final step is binding arbitration—unless the employee has chosen not to participate in the arbitration portion of the Solutions InSTORE Program.  The four steps are explained in depth in the Solutions InSTORE Program Plan Document ("Plan Document").  A true and correct copy of the Plan Document effective January 1, 2007 and in force when Ms. Narez was hired is attached to this declaration as

**Exhibit A.**

9.    The following is a summary of the Solutions InSTORE Program's four steps:

**Step 1:**    The Solutions InSTORE Program begins with "Open Door." Employees are encouraged to bring their concerns to a supervisor or local management team member (e.g., Store or Facility Manager, Human Resources Representative) for discussion and resolution.

**Step 2:**  In Step 2, the employee submits a written request for review to the Manager of Step 2 claims where it is assigned to a Human Resources professional that was not previously involved in the underlying decision for investigation and reviewed with an Associate Relations Vice President or Senior Vice President of Human Resources.

**Step 3:**  In Step 3, if the claim involves legally protected rights, the request is directed to the Office of Solutions InSTORE in Cincinnati, Ohio.  If the dispute involves a claim related to layoff, harassment, discrimination, reduction in force, or other alleged statutory violation, a trained professional investigates it thoroughly and objectively. Other disputes, including disputes over termination and final warnings, may be submitted to a Peer Review Panel at the employee's option.  In either case, the dispute is decided by

the Peer Review Panel or the Office of Solutions InSTORE and not by the employee's local/divisional management.

**Step 4:**   The fourth and final step of the Solutions InSTORE Program is binding arbitration, which is administered by the American Arbitration Association ("AAA").   Arbitration under the Solutions InSTORE Program is a voluntary term and condition of employment in that all employees are given the opportunity to opt out of arbitration by completing a one-page form and mailing it to the Office of Solutions InSTORE in Ohio within a prescribed time period.   If the employee does not submit the opt-out form within the prescribed time period, the employee agrees to arbitration as a term and condition of continued employment.   Employees may agree to employment with or without Step 4-Arbitration.   While employees are encouraged to go through Steps 1 through 3 before proceeding to Step 4-Arbitration, there is no administrative or other requirement that they do so. Some former and current employees choose not to go through Steps 1 through 3 before proceeding to Step 4-Arbitration.

10.   Employees hired after the initial implementation of the Solutions InSTORE Program are given thirty (30) days from their date of hire to opt out of Step 4-Arbitration.

11.   Under the terms of the Solutions InSTORE Program, Macy's is bound by the decisions made at any of the first three steps of the Solutions InSTORE Program—even those not in Macy's favor.   In contrast, the employee may appeal any decision made at these steps. In short, the employee drives the process.

12.   The employee's choice of whether to opt out of Step 4- Arbitration is confidential.   Macy's intentionally designed the opt-out procedure so that the employee's local management is unaware of an employee's election.   All employees across the country are asked to mail the opt-out Election Forms to Ohio so that no one at the Macy's stores or other work locations has access to individual election information, including returned forms.   Only a select few Company employees have access to the returned opt-out Election Forms and the portion of the electronic database containing an employee's opt-out status.   An employee's opt-out status is accessed only when that information becomes relevant to handling an employee's claim.

13.   An employee's decision to accept or opt out of binding arbitration has no detrimental effect on her employment.   Macy's strictly prohibits retaliation against employees who use or opt out of Step 4 - Arbitration of the Solutions InSTORE Program.   Such retaliation would seriously undermine the Solutions InSTORE Program's core purpose, which is to surface and resolve disputes

1    quickly and fairly.  Macy's communicates this no retaliation policy

2    to its employees through the Solutions InSTORE Program information

3    given to employees.

4

5        14.  If  an  employee  chooses  to  be  covered  by  Step  4-

6    Arbitration,  the  agreement  covers  most  employment-related  claims

7    asserted  either  by  the  employee  or  by  Macy's,  whether  the  claims

8    arise  under  federal,  state,  or  local  law.  **Ex. A, Plan Document,**

9    **pp. 6-7.**  Certain  claims  are  not  subject  to  arbitration,  such  as

10   those  brought  under  an  employee  pension  or  benefit  plan,  or  those

11   under  the  National  Labor  Relations  Act.  **Ex. A, p. 7.**  If  the

12   employee  chooses  to  be  covered  by  arbitration,  Macy's  in  turn  is

13   required  to  resolve  any  employment-related  disputes  with  the

14   employee by arbitration as well.  **Ex. A, p. 6.**

15

16       15.  Other  aspects  of  Step 4-Arbitration  of  the  Solutions

17   InSTORE Program include:

18

19       (a)  The employee bears minimal costs equal to one day's wage,

20            not to exceed a maximum of $125 for a filing fee, and may

21            pay nothing if the arbitrator so orders (**Ex. A, pp. 14-**

22            **15**);

23

24       (b)  Macy's will have an attorney present at the arbitration

25            only if the employee decides to have an attorney present

26            at the arbitration (**Ex. A, p. 9**);

27

28

(c)   Macy's will reimburse the employee's legal fees up to $2,500 each year (calculated on a continuously rolling 12-month period); if the employee elects not to be represented by counsel, Macy's will reimburse the employee for incidental costs up to $500 (also calculated on a rolling 12-month period) (**Ex. A, p. 15**);

(d)   Discovery is permitted and includes voluntary document disclosures by each party, three depositions per side, twenty interrogatories (each of which may include a document request), and a provision allowing the arbitrator to award more discovery if the relevant standard is met (**Ex. A, pp. 9-10**);

(e)   The arbitrator, jointly selected by both Macy's and the employee, has the same power and authority as a judge to grant any ultimate relief under applicable law, including attorney's fees and costs; and the applicable statutes of limitation are the same as those that would apply in court (**Ex. A, pp. 8-9, 15**);

(f)   The AAA administers the arbitration under the Solutions InSTORE Program Plan Document rules.  If necessary, the AAA Employment Arbitration Rules and Mediation Procedures may be used to supplement the Plan Document rules (**Ex. A, p. 6**); and

(g)   The Solutions InSTORE Program also requires an arbitrator to submit a written decision specifying any remedies found to be appropriate. The arbitrator also may include findings of fact and conclusions of law in any decision. (**Ex. A p. 14**).

**Processing of Election Forms.**

16.   The PeopleSoft human resource system is a software database that includes employment information such as an employee's identification number, address, job code, title, location, dates of employment, and other items.   Macy's customarily relies on the accuracy of the PeopleSoft human resource system and the information contained therein for the administration and resolution of issues related to its employee population.   Access to the area of the PeopleSoft human resource system in which the employee's opt-out election is recorded is limited to the staff of the Office of Solutions InSTORE and to a very limited number of individuals responsible for data input and system maintenance.

17.   The Office of Solutions InSTORE has regular mail collection procedures designed to ensure that all opt-out Election Forms mailed to the Ohio address as instructed are recorded and accounted for.   Employees of Macy's Credit and Customer Services, Inc. ("MCCS"), a subsidiary of Macy's, Inc., receives the Election Forms, opens and date-stamps them. After reviewing for

completeness, MCCS records the employee's opt-out status into the PeopleSoft human resource system, a database regularly used by the Office of Solutions InSTORE to verify the opt-out status. The electronic information on the PeopleSoft database is maintained in the ordinary course of business and is accessed and used regularly by the Office of Solutions InSTORE in implementing and enforcing the Solutions InSTORE Program.

18.   MCCS sends the Election Forms to the Office of Solutions InSTORE where they are stored in file cabinets and organized by the Social Security number of the employees who have chosen to opt out of Step 4-Arbitration. These records are maintained in the ordinary course of business. Office of Solutions InSTORE personnel, including myself, rely upon these records in the performance of our job duties.

**Ms. Narez's Opportunity to Opt-Out of Step 4-Arbitration.**

19.   A review of the PeopleSoft human resources system reveals that Ms. Narez was hired in November 2013 at Macy's Salinas, California store where she is currently employed.

20.   Macy's and each of its subsidiaries and divisions take multiple measures to ensure their newly hired employees (i.e., those hired after the Solutions InSTORE Program was initially rolled out in 2003, hereafter "new hires") are aware of the Solutions InSTORE Program and are aware that, if they do not opt

out of Step 4-Arbitration within thirty (30) days of their hire,
they agree to arbitration.   For example, each of the following
educates employees about the Solutions InSTORE Program:

- The Solutions InSTORE Plan Document (**Ex. A**);

- The Solutions InSTORE New Hire Brochure (**Ex. B**);

- The Solutions InSTORE opt-out Election Form (**Ex. C**);

- The Solutions InSTORE poster used in Macy's stores (**Ex. D**);

- The Solutions InSTORE website (www.employeeconnection.net/solutionsinstore);

- The Solutions InSTORE New Hire Acknowledgement (along with Ms. Narez's electronic signature acknowledging receipt of same on November 23, 2013) (**Ex. E**); and

- The new hire orientation video shown to all newly hired employees which explains the Program and that the employee can opt out of Step 4 (**Ex. F and G**).

21.   Macy's created a descriptive and explanatory Brochure regarding the Solutions InSTORE Program for dissemination to all new hires.   This Brochure details the Solutions InSTORE Program. The Brochure uses both graphics (such as charts and tables) and multiple pages of text to explain each step of the Solutions InSTORE Program in detail.   A true and correct copy of the

1  Solutions InSTORE Program Brochure provided to Ms. Narez is

2  attached as **Exhibit B.**

3      22.  The Solutions InSTORE Brochure contains:  (1) a summary

4  of certain provisions from the Plan Document, (2) a complete copy

5  of the Plan Document, and (3) an opt-out Election Form.  The

6  Brochure emphasizes, among other things, that the arbitration

7  process is binding, covers most disputes related to the employee's

8  employment, and is a waiver of the employee's right to a civil

9  action and jury trial.  The Brochure explains that the employee may

10 opt out of Step 4-Arbitration.  Thus, the employee has a choice

11 about whether to be covered by Step 4-Arbitration.  *See* **Ex. B**.

12     23.  Specifically, the Brochure provides:

13                  **STEP FOUR: THE DECISION IS YOURS**

14     Your Solutions InSTORE enrollment period will be your

15     opportunity to decide whether you want to receive all four

16     steps of this program. You are automatically covered by Step 4

17     unless you choose to exclude yourself. When covered by Step 4

18     final and binding arbitration, you and the Company agree to

19     use arbitration as the sole and exclusive means to resolving

20     any dispute regarding your employment; we both waive the right

21     to civil action and a jury trial.  If you decide you want to

22     be excluded from participating in and receiving the benefits

23     of Step 4, we need you to tell us in writing by completing the

form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided within 30 days of your hire date. In this case, Steps 1-3 will continue to apply to you -- you will no longer, however, be eligible for the benefits available under the Step 4: Arbitration process.

Choosing to be covered by Step 4 is your decision.  We urge you to read the Plan Document and educate yourself about the benefits and limitations of arbitration to make an informed decision that's best for you.   There are many sources of information and opinions about arbitration.   One excellent source of information is the AAA website, which you can access at www.adr.org.

(**Exhibit B**, page 10 of the Brochure.)

Moreover, the brochure advises employees that a copy of the Plan Document is included in the brochure itself, and "can also be obtained through www.employeeconnection.net, a request to your local human resources representative, an email sent to solutions.instore@macys.com or by calling the Office of Solutions InSTORE at 1-866-285-6689."  *Id.*

24.  If a new hire wishes to opt out of Step 4-Arbitration, all he or she has to do is complete the opt-out Election Form and mail it back to the Office of Solutions InSTORE in Ohio within thirty (30) days of his or her date of hire.  A true and correct

copy of the opt-out Election Form is attached as **Exhibit C.**
(Exhibit C has the watermark "Exhibit" for purposes of this
declaration only.)   The Election Form is inserted in the middle of
the Solutions InSTORE Brochure.   The Election Form notifies the
employee of his or her right to opt out of Step 4-Arbitration and
explains that in order to opt out, the employee must complete the
Election Form and mail it back to the Office of Solutions InSTORE
in Ohio.  *See* **Ex. C.**

25.  The Office of Solutions InSTORE also gives each Macy's
store copies of posters that offer the Solutions InSTORE Program as
a dispute resolution tool and sets forth the hotline number should
an employee need to contact the Solutions InSTORE Office.   The
posters are for the stores and facilities to display in an area
frequented by employees.   A true and correct (although not to
scale) copy of the poster provided to the stores for display to the
time Ms. Narez was hired is attached as **Exhibit D.**

26.  Additionally, employees have access to
www.employeeconnection.net, which can be accessed by the employee
on any computer with an Internet connection.   The website provides
employees with critical information about their employment,
including, among other things, corporate policies/procedures,
benefits, wage information, and work schedules, in addition to
information about the Solutions InSTORE Program. Like the Brochure,

the Solutions InSTORE website uses both graphics and text to explain each step of the Solutions InSTORE Program in detail. The website also provides employees with access to the entire Solutions InSTORE Plan Document.

27. Upon receipt of the Solutions InSTORE brochure, and as further explained in the Declaration of Ragunathan Veeraraghavan filed in connection with Defendant's Motion to Compel, the newly hired employee is required to physically or electronically sign a "Solutions InSTORE New Hire Acknowledgement." By signing, the employee acknowledges that he or she has received the Brochure (which includes a copy of the Plan Document), understands that he or she has thirty (30) days to decide whether to opt out of Step 4-Arbitration, and can obtain further information about the program from a variety of sources, such as the Solutions InSTORE website. To electronically sign the New Hire Acknowledgment, Ms. Narez was prompted to enter her own Social Security number, month and day of birth, and zip code. A true and correct copy of Ms. Narez's Solutions InSTORE New Hire Acknowledgment and confirmation of her electronic signature are attached as **Exhibit E**. Portions of **Exhibit E** have been redacted to remove confidential personal information.

28. Also, as part of a new employee's introduction to the company, Macy's requires that the Solutions InSTORE Program be

covered as part of the orientation process. All newly-hired employees must view an informational video about the Solutions InSTORE Program as part of their new hire computer-based training. The employee must enter his or her employee ID number and verify their first name, last name, division and location to start the video.  Upon conclusion of the video, the employee must check a box indicating that "I verify that I have viewed the entire Solutions InSTORE presentation" and again enter his or her employee ID. After verifying completion of the Solutions InSTORE new hire video, the employee is recorded as having "completed" the Solutions InSTORE new hire training video and this fact is reflected in the employee's training records.  A true and correct copy of the video transcript is attached as **Exhibit F.**  A true and correct copy of a screenshot reflecting the trainings (including Solutions InSTORE) completed by Ms. Narez is attached as **Exhibit G.**

29.  I personally reviewed the PeopleSoft Human Resource database to determine whether Ms. Narez returned an Election Form within 30 days of her hire on November 23, 2013.  According to the database, Ms. Narez never returned an Election Form.  I also personally reviewed the appropriate areas of the correct file cabinet (based on Ms. Narez's Social Security number), and there was no Election Form returned by Ms. Narez.

**Ms. Narez Never Challenged Her Inclusion in the Arbitration**

**Portion of the Solutions InSTORE Program.**

30.   The  Office  of  Solutions  InSTORE  maintains  a  toll-free phone  number  for  employees  to  use  if  they  have  any  questions concerning  the  Solutions  InSTORE  Program.    In  addition,  all employee contacts with the Office of Solutions InSTORE, whether by phone, voicemail, e-mail, or letter, are tracked and managed in an online recordkeeping system.

31.   I reviewed the database to determine whether Ms.  Narez ever contacted the Office of Solutions InSTORE.   My review revealed that Ms. Narez contacted the Office of Solutions InSTORE at least once about  a  work  related  concern  but  she  never  challenged  her inclusion in Step 4-Arbitration.

1        32.   Macy's maintains the attached records in the regular and

2    ordinary course of its business.  All of the attached records were

3    prepared and compiled by Macy's personnel in the ordinary course of

4    business at or near the time of the acts, conditions, or events

5    recorded. Macy's relies on the trustworthiness of these documents

6    in the discharge of its duties and responsibilities pertaining to

7    its employee population. The attached exhibits are true and correct

8    copies of the documents maintained by Macy's.

9        I declare under penalty of perjury under the laws of the state

10   of California and the United States of America that the foregoing

11   is true and correct.

12

13

14

15       Executed this ___ day of April, 2016 at Cincinnati, Ohio.

16

17

18

19       MATTHEW MELODY

20

21

22

23

24

25

26

27

28

DECLARATION OF MATTHEW MELODY IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION - Case No.5:16-cv-00936-LHK - Page 19